HOOD, Judge.
This action was instituted by plaintiff, Roy Joseph Hargrave, to recover from defendants, T. E. Mixon Lumber Company, Inc., Teche Concrete, Inc., and Oubre Floor Covering, Inc., sums of money allegedly paid to said defendants through mistake. Defendants filed an answer denying liability, and after trial of the case judgment was rendered by the district court in favor of defendants rejecting plaintiff’s demands. Plaintiff has appealed from that judgment.
After the appeal had been perfected, defendants filed in this court a peremptory exception of no right and no cause of action, and that exception also is before us .for determination.
The evidence establishes that during the month of May, 1961, plaintiff entered into an agreement with Ossay J. Boutte under the terms of which Boutte was to construct a house for plaintiff on a lot owned by the latter, and plaintiff was to pay to Boutte the sum of $11,500.00 for this job. Plaintiff paid $2,500.00 in cash to Boutte at the time the contract was entered into, and in order to obtain funds with which to pay the balance of the contract price plaintiff borrowed $9,000.00 from the Iberia Savings and Loan Association, executing a mortgage on the lot and the proposed house as security for the loan. At the time this loan was made Hargrave agreed with the Savings and Loan Association that the association would not advance the full amount of the loan to him, but instead it would disburse directly to materialmen the amounts due for materials used in the house, and directly to Boutte the amounts due for labor on such house, as accounts became due and payable. Proof of the amounts due for materials and labor were to be submitted to the association before payment was made. Boutte was aware of this arrangement, and it apparently was agreeable with him that payments under his contract with plaintiff would become due and would be paid in that manner.
On or shortly before June 16, 1961, the Savings and Loan Association was furnished with an affidavit executed by Boutte, in which Boutte requested that the association disburse $2,500.00 from the proceeds of the loan as partial payment for the construction of the Hargrave house, and he stated in this affidavit that the money so disbursed would be used to pay the following bills or claims “which have been or will be incurred against said construction,” to-wit:
T. E. Mixon Lumber Co. $1,066.92
Teche Concrete, Inc. $ 500.00
Oubre Floor Company $ 500.00
Labor $ 433.08
Pursuant to the request contained in the above described affidavit, and considering the payments to be in line with the agreed method of disbursing the loan funds, the Savings and Loan Association issued four checks, all of which are dated June 16, 1961, and are described as follows:
(1) Check for $1,066.92, payable to the order of Hargrave, Boutte and T. E. Mixon Lumber Company;
(2) Check for $500.00, payable to the order of Hargrave, Boutte and Teche Concrete, Inc.;
(3) Check for $500.00, payable to the order of Hargrave, Boutte and Oubre Floor Company; and
(4) Check for $433.08, payable to the order of Hargrave and Boutte.
No question is raised in this suit as to the last of the four checks hereinabove listed. Serious issues are presented, however, with reference to the payments represented by the first three of those checks.
After the first three of said checks had been endorsed by Hargrave and by Boutte, each defendant received from Boutte the check in which it was named as one of the payees, and each defendant cashed the check which it received and imputed the payment to other accounts owed to it by *267 Boutte. The evidence shows, however, that none of the defendants ever furnished any materials or labor for the construction of the Hargrave house, and Hargrave was not indebted to any of said defendants. Boutte was indebted to each of the defendants for a sum which was in excess of the amount of the check received by it, but Boutte’s indebtedness to these defendants had no relation to the Hargrave job. The evidence also establishes that the officers at the Savings and Loan Association relied on the affidavit of Boutte in issuing the checks, and that Hargrave relied on the representations made by Boutte in endorsing those checks. Neither the officers of the association nor Hargrave had any apparent reason to question Boutte’s statement that the defendants had furnished materials for this job.
Since the checks were delivered to and were cashed by defendants, they must be charged with having knowledge of the fact that the checks were issued by the Savings and Loan Association and that Hargrave and Boutte were named as joint payees. The evidence also shows that the defendants knew that Boutte was engaged in the construction business, and each defendant obviously knew that it had furnished no materials in connection with the Hargrave job. The affidavit executed by Boutte, of course, was not attached to the checks, and none of the defendants had any knowledge of the fact that Boutte had executed such an affidavit erroneously stating, in effect, that these defendants had furnished materials for that job.
Boutte apparently was having some financial difficulties about the time these checks were issued. The Mixon Lumber Company intended to file a lien on another construction job which Boutte was performing unless a payment of $1,066.92 was made on that account within a day or two after June 16, 1961. Teche Concrete held a $500.00 check which had been issued by Boutte and upon which payment had been refused because of insufficient funds, and the payment to that defendant was made to satisfy that check. Oubre Floor Covering had already placed its claim against Boutte, arising out of another construction, job, in the hands of an attorney for collection. In order to obtain money to pay these urgent claims, Boutte falsely certified that these defendants had furnished materials for the Hargrave job.
After these and a number of other payments had been made from the proceeds of the Hargrave loan, Boutte defaulted in the performance of his contract to construct the house, and he subsequently went into bankruptcy. It was necessary for Hargrave to make other arrangements to have the house completed, and the total cost of completing the construction, including the amounts which had been paid to Boutte and to materialmen over and above the payments here in dispute, exceeded the contract price for that job. A number of affidavits have been filed in the mortgage records of Iberia Parish purporting to evidence and preserve liens and' privileges on the Har-grave property for materials and labor furnished in connection with this construction.
The Savings and Loan Association made disbursements from the loan proceeds amounting to the aggregate sum of $5,775.-32, including the payments made to defendants here, leaving a balance of $3,224.68 which has not been disbursed from such funds. The record shows, however, that plaintiff has incurred additional expenses amounting to more than $6,000.00 in completing the construction.
Plaintiff demands judgment in his favor and against each of the three defendants respectively for the amount which each such defendant was paid by means of these checks. He contends that these payments were made to defendants through mistake, plaintiff believing himself to be a debtor, and that under those circumstances he is entitled to reclaim what he has paid. To support his demands, plaintiff relies primarily upon the provisions of Articles 2133, *268 2301 and 2302 of the LSA-Civil Code, which articles read as follows:
“Art. 2133. Every payment presupposes a debt; what has been paid without having been due, is subject to be reclaimed.
“That can not be reclaimed that has been voluntarily given in discharge of a natural obligation.”
“Art. 2301. He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.”
“Art. 2302. He who has paid through mistake, believing himself a debtor, may reclaim what he has paid.”
The payments to the defendants in this case were made from the proceeds of the loan which plaintiff had obtained from the Savings and Loan Association. Prior to the issuing of these checks these funds belonged to Hargrave, and by means of such checks portions of that fund were paid to defendants. Although plaintiff did not personally hand the checks to defendants, he specifically authorized these payments and he endorsed each check for the specific purpose of paying the amount of such check to the defendant which was also named as a payee on it. Under the circumstances presented here we consider that the payment to each of said defendants was made by plaintiff. The evidence establishes that these payments were made through mistake, plaintiff believing himself to be a debtor of defendants. We are convinced that the association would not have issued the checks and plaintiff would not have endorsed them if either had not believed that plaintiff was indebted to defendants for materials furnished for the construction of the Har-grave house.
The trial judge, however, after finding that Boutte had committed a fraud on plaintiff, concluded that Plargrave and the officers of the Savings and Loan Association were negligent, careless and at fault in issuing and endorsing the checks without first requiring Boutte to present sworn itemized statements from defendants and without previously determining with certainty that defendants had furnished materials for the construction of the Hargrave house. The negligence of Hargrave and the association in those respects, the trial judge held, made it possible for Boutte to commit this fraud. The court further held that defendants became “innocent owners” of the three checks here at issue, and that plaintiff is not entitled to recover because “the burden of loss should be imposed on him who most contributed to it.”
We are aware of the line of jurisprudence which holds, in effect, that negligence or carelessness on the part of the plaintiff precludes him from reclaiming, under the provision of Articles 2301 and 2302 of the LSA-Civil Code, money which he paid to defendant through mistake. See: Pennsylvania Casualty Co. v. Brooks, La.App. 1 Cir., 24 So.2d 262; and Metropolitan Life Ins. Co. v. Mundy, La.App. 1 Cir., 167 So. 894. But see also: Massias v. Gasquet, 4 Rob. 137; Glassell v. New York Life Ins. Company, La.App. 2 Cir., 180 So. 154; and XX T.L.R. pp. 618-621.
It is not necessary for us to consider this question of law, however, because we are convinced that in this case the trial judge erred in holding that Hargrave and the officers of the Savings and Loan Association were negligent in issuing and endorsing the checks or in making the payments to defendants under the circumstances presented here. In our opinion there was no duty on the part of plaintiff or the Savings and Loan Association to check each item of material as it went into the construction to determine from whom it was purchased and the amount due for it. The association and the plaintiff had the right, we think, to rely on the affidavit of the contractor to the effect that the defendants had furnished materials for that job and that the amounts recited in the affidavit were actually due for *269 those materials, especially since it appears that nothing had occurred previously to cause plaintiff to question the representations made by Boutte. For that reason we conclude that plaintiff was not negligent or at fault in making these payments under the mistaken belief that he owed the amounts so paid.
Defendants, in support of their exception of no right or cause of action, contend that the Savings and Loan Association disbursed the funds to defendants contrary to the instructions which it had received from plaintiff, that accordingly plaintiff is not indebted to the association for the amount of those disbursements, and that plaintiff for the same reason has no right or cause of action to recover the amounts so paid from defendants. There appears to have been some misunderstanding between plaintiff and the disbursing officer of the association as to whether Boutte was to submit receipts and invoices from each materialman before payment was to be made, but the evidence does not convince us that the association acted beyond its authority or instructions in issuing these checks. If it did, then we think plaintiff ratified its actions by endorsing the checks. We, therefore, find no merit to the exceptions filed by defendants.
Defendants further argue that plaintiff cannot reclaim the amounts paid to defendants because the money so paid was used to discharge obligations owed to defendants by Boutte. To support that argument counsel for defendants relies on Article 2138 of the LSA-Civil Code, which provides :
“Art. 2138. If the debtor give a thing in payment of his obligation, which he has no right to deliver, it does not discharge his obligation, and the owner of the thing given may reclaim it in the hands of the creditor, unless the obligation has been discharged by the payment of money, or the delivery of some of those things which are consumed in the use, and the creditor has used them; in which cases neither the money nor the things consumed can be reclaimed, and the payment will be good." (Italics added.)
Counsel takes the position that Boutte made the payments to each of the defendants with stolen money, and since Boutte’s obligation to each of said defendants was discharged by the payment of money it is argued that the above quoted article bars plaintiff from reclaiming the money so paid.
The trial court apparently, and we think correctly, rejected this contention. In our opinion Article 2138 of the LSA-Civil Code is not applicable, because the payments here were made by plaintiff, rather than by Boutte. We realize that Hargrave and Boutte endorsed each check before it was delivered to the third payee, a defendant, who then endorsed and cashed it. In our opinion, however, this did not constitute a payment in money by Boutte alone. The checks could not be cashed until they had been endorsed by all three of the joint payees, and the fact that Hargrave and Boutte had already endorsed them before they were delivered to defendants by Boutte does not constitute a payment of money to defendants by Boutte. As has already been pointed out, the funds belonged to plaintiff and by means of these checks plaintiff made the payments to defendants. LSA-C.C. Article 2138 is not applicable for the further reason that plaintiff was not a debtor of defendants, he did not give the money in payment of “his obligation,” he did have the right to deliver the money which was paid, and since plaintiff was not obligated to defendants the payment did not discharge any such obligation.
The issue here is similar to that presented in Central Surety & Ins. Corp. v. Corbello, La.App. 1 Cir., 74 So.2d 341, where plaintiff insurer was permitted, under the provision of LSA-C.C. Articles 2301 and 2302, to reclaim benefits paid to defendant on the mistaken belief that the policy was in force at the time the loss was sustained.
*270 In Thomas v. Universal C. I. T. Credit Corp., La.App. 1 Cir., 53 So.2d 513, plaintiff recovered a sum of money which it paid to defendant under the mistaken belief that defendant held a chattel mortgage on an automobile which plaintiff had acquired and resold. In that case the court held that plaintiff was not barred from recovery because he failed to check the mortgage records before payment was made to determine whether a chattel mortgage in favor of defendant actually had been recorded in favor of defendant. See also Roney v. Peyton, La.App. 2 Cir., 159 So. 469; Succession of Jones, La.App. 2 Cir., 136 So.2d 720; Massias v. Gasquet, supra; Greenfield Box Co. v. Independence Veneer and Box Mfg. Co., 163 La. 86, 111 So. 608; Crawford v. Alatex Construction Service, Inc., La.App.Orl., 120 So.2d 845; Vincent v. Farmers Bank & Trust Co., 189 La. 1073, 181 So. 540; Brown & Sons Lbr. Co. v. Exchange Nat. Bk., La.App. 2 Cir., 8 La.App. 328.
In our opinion the payments involved here were made to defendants through mistake, plaintiff believing himself to be a debtor. The mistake was not brought about by the negligence of plaintiff, and under the provisions of Articles 2301 and 2302 of the LSA-Civil Code plaintiff is entitled to reclaim the amounts paid.
For the reasons herein assigned, therefore, the judgment of the district court is reversed, and IT IS HEREBY ORDERED, ADIUDGED and DECREED that judgment be rendered in favor of plaintiff, Roy Joseph Hargrave, and against each of the defendants, as follows:
(1) Against defendant, T. E. Mixon Lumber Company, Inc., for the sum of $1,-066.92, with legal interest thereon from date of judicial demand until paid, and for one-third of all costs of this suit;
(2) Against Teche Concrete, Inc., for the sum of $500.00, with legal interest thereon from date of judicial demand until paid, and for one-third of the costs of this suit; and
(3)Against Oubre Floor Covering, Inc., for the sum of $500.00, with legal interest thereon from date of judicial demand until paid, and for one-third of the costs of this suit.
Judgment is further rendered in favor of plaintiff overruling the exception of no right and no cause of action filed herein by defendants, and condemning each of said defendants to pay one-third of the costs of this appeal.
Reversed and rendered.